UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEADRIAN BOYKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-03817-SEB-MPB |
| | ) | |
| WEXFORD HEALTH SOURCES, | ) | |
| CHRISTINA CONYERS, | ) | |
| DUANE ALSIP, | ) | |
| MICHAEL KING, | ) | |
| WEXFORD OF INDIANA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Motion for Summary Judgment**

Plaintiff De'Adrian Boykins is an insulin-dependent diabetic, and he is currently incarcerated at Pendleton Correctional Facility. He filed this civil rights action under 42 U.S.C. § 1983 alleging that defendants Christina Conyers and Duane Alsip exhibited deliberate indifference to his serious medical needs by inadequately responding to grievances. These defendants request judgment as a matter of law. Ms. Conyers and Mr. Alsip reasonably responded to grievances submitted by Mr. Boykins. Therefore, their motion for summary judgment, dkt. [61], is **granted**.

**I. Summary Judgment Standard**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. Summary Judgment Evidence

Mr. Boykins has been incarcerated at Pendleton Correctional Facility since February 2014, and the events that form the basis of this action all occurred there. Dkt. 63-1 at 8-9. In this action, he names Ms. Conyers and Mr. Alsip as defendants and challenges their handling of grievances he filed concerning the lack of treatment he received for his diabetes.[1] Dkt. 36 at 1-3. Ms. Conyers is the Grievance Coordinator at Pendleton, dkt. 63-2 at ¶ 1, and Mr. Alsip is the Deputy Warden of Operations, dkt. 63-10 at ¶ 2. Neither Ms. Conyers nor Mr. Alsip is a medical professional. Dkt. 63-2 at ¶ 19; dkt. 63-10 at ¶ 3.

At the age of three, Mr. Boykins was diagnosed with diabetes, dkt. 63-1 at 10, and he describes himself as a "severe diabetic," dkt. 36 at 2. He suffers from both high and low glucose levels, and he experiences significant side effects when his glucose spikes or drops. Dkt. 63-1 at 16. Those side effects include dehydration, frequent urination, headaches, nausea, vomiting, muscle tightness, and difficulty breathing. *Id.* Mr. Boykins needs insulin to manage his diabetes,

---

[1] Mr. Boykins also named Michael King and Wexford of Indiana, LLC, as defendants. The motion for summary judgment filed by Ms. Conyers and Mr. Alsip does not implicate the claims against Mr. King and Wexford, so the Court will not address the allegations against them.

dkt. 63-1 at 10-11, and in June 2019, he was supposed to receive glucose monitoring and insulin shots three times a day, *id.* at 14, 24.

In June 2019, Mr. Boykins was moved to restrictive housing at Pendleton for disciplinary reasons. Dkt. 63-1 at 18, 24. While Mr. Boykins was in restrictive housing, he relied on medical staff to come to his housing unit and provide the thrice daily glucose monitoring and insulin shots. *Id.* at 27-29. Correctional officers and members of the custody staff were not allowed to test his glucose or give an insulin shot. *Id.*

Shortly after arriving in restrictive housing, Mr. Boykins did not receive glucose monitoring or insulin shots at lunchtime. Dkt. 36 at 2; *see also* dkt. 63-1 at 30. In early July, he was taken to the medical unit to receive fluids and be monitored because he was dehydrated from vomiting. Dkt. 63-1 at 31; dkt. 71-1 at 1-8. He alleges that he did not receive midday glucose monitoring or insulin shots for the duration of his stay in restrictive housing. Dkt. 63-1 at 22-24.

Mr. Boykins wrote three informal grievances about the missed glucose monitoring and insulin shots in July 2019. Dkt. 63-4; dkt. 71-1 at 19. In each grievance, he stated that he was a severe diabetic and had not received glucose monitoring or insulin shots as medically directed. Dkt. 63-4 at 1, 3; dkt. 71-1 at 19.

Ms. Conyers received two of these informal grievances on July 19, 2019. Dkt. 63-2 at ¶ 10. She emailed the informal grievances to Mr. King, the Health Services Administrator at Pendleton, the same day and asked him to "please respond [as soon as possible] as this is time sensitive." *Id.* at ¶ 11; *see also* dkt. 63-3. Ms. Conyers did not receive a response from Mr. King. Dkt. 63-2 at ¶ 12.

On August 13, 2019, Ms. Conyers received a formal grievance from Mr. Boykins dated July 16, 2019. *Id.* at ¶ 13; *see also* dkt. 63-5. This formal grievance contained the same information

3

as the informal grievances. Mr. Boykins explained that he is a "severe insulin-dependent diabetic" that has a "doctor's order" for thrice daily glucose monitoring and insulin shots. Dkt. 63-5. He explained that he was not receiving treatment as ordered and had experienced significant side effects—necessitating IV fluids and medical observation—as a result. *Id.* He stated that he had filed informal grievances with medical staff and had not received a response. *Id.* Ms. Conyers denied the grievance as untimely and returned it to Mr. Boykins. Dkt. 63-2 at ¶ 14; *see also* dkt. 63-6.

Mr. Boykins immediately appealed the return of his grievance, stating that he filed his grievance on July 16, 2019. Dkt. 63-7. Ms. Conyers returned the grievance appeal to Mr. Boykins because it did not relate to an accepted grievance. Dkt. 63-2 at ¶ 15.

On August 15, 2019, two days after his unsuccessful attempt to appeal his returned grievance, Mr. Boykins submitted an informal grievance to Ms. Conyers. Dkt. 63-8. He explained that he submitted the formal grievance on July 17, 2019, and appealed it in August after not receiving a response. *Id.* Ms. Conyers responded to the informal grievance on August 21, stating that she had contacted medical and was awaiting a response. Dkt. 63-2 at ¶ 17; *see also* dkt. 63-8.

The next day, Ms. Conyers emailed Linda Frye, another Health Services Administrator at Pendleton, asking for her input on the issue and requesting a response "in a timely manner as this is time sensitive." Dkt. 63-9; dkt. 63-2 at ¶ 18. Ms. Frye quickly responded and informed Ms. Conyers of the following: (1) Mr. Boykins was seen by medical staff two days prior; (2) there was an order for "NPH" insulin twice a day and "regular" insulin three times a day;[2] (3) Mr. Boykins "often does not take" insulin; (4) she could not do anything about missed glucose monitoring; and (5) medical staff was trying to get Mr. Boykins approved for a different type of insulin that "might

---

[2] There is no explanation of the differences in these two types of insulin.

help the situation." Dkt. 63-9. Ms. Frye also advised that she would "alert nurses to make sure [Mr Boykins] gets insulin as ordered." *Id.* It is not clear whether Ms. Conyers communicated with Mr. Boykins after receiving a response from Ms. Frye.

On August 26, 2019, Mr. Boykins submitted an informal grievance to Mr. Alsip. Dkt. 63-11; dkt. 63-10 at ¶ 6. He complained that the medical order for thrice daily insulin shots was not being followed and that it was affecting his health and well-being. Dkt. 63-11. He explained that his grievances to medical were not successful and that he was experiencing significant side effects as a result of the missed insulin shots. *Id.* In response, Mr. Alsip told Mr. Boykins to direct grievances "to staff committing or failing to provide services." *Id.*; *see also* dkt. 63-10 at ¶ 8. Mr. Alsip also notified a Health Services Administrator about Mr. Boykins's complaints, dkt. 63-10 at ¶ 7, but it is unclear whether Mr. Alsip informed Mr. Boykins of his conversation with the Health Services Administrator. Mr. Boykins filed this action in early September 2019. Dkt. 2.

Ms. Conyers and Mr. Alsip aver that they cannot administer medical treatment to inmates at Pendleton and that they rely on "the representations and instructions of trained medical professionals." Dkt. 63-2 at ¶¶ 20-21; dkt. 63-10 at ¶¶ 4-5. To refute these assertions, Mr. Boykins has submitted an Indiana Department of Correction Policy that states: "Department personnel must consider how best to ensure continuity of care for serious medical conditions at the inception, during, and at the conclusion of confinement." Dkt. 71-1 at 12-17.

### III. Analysis

Mr. Boykins argues that Ms. Conyers and Mr. Alsip displayed deliberate indifference to his serious medical needs when they failed to act on grievances concerning Mr. Boykins's missed glucose monitoring and insulin shots. Dkt. 36 at 2-3. Ms. Conyers and Mr. Alsip seek summary judgment arguing: (1) they were not personally involved in the alleged failure to provide treatment;

(2) they reasonably responded to Mr. Boykins's grievances and thus did not violate his rights; and (3) they are shielded from liability by the doctrine of qualified immunity. Dkt. 62 at 10-18. Mr. Boykins opposes the request for summary judgment, dkt. 71, and Ms. Conyers and Mr. Alsip did not reply.

Because Mr. Boykins is a convicted prisoner, his medical treatment is evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). The Eighth Amendment "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014). "To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 772, 727-728 (7th Cir. 2016) (en banc). Ms. Conyers and Mr. Alsip do not dispute that Mr. Boykins's diabetes constitutes a serious medical condition. Thus, the availability of judgment as a matter of law turns on whether either Ms. Conyers or Mr. Alsip were deliberately indifferent to Mr. Boykins's diabetes.

"It is well established that for constitutional violations under § 1983, a government official is only liable for his or her own misconduct." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (cleaned up). A plaintiff may not rely on *respondeat superior* but instead must "allege that the defendant, through his or her own conduct, has violated the Constitution." *Id.*

A constitutional violation based on deliberate indifference "may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to

it." *Id.* (cleaned up). An inmate's correspondence to a prison official may provide sufficient knowledge of a constitutional deprivation. *Id.* at 781-82. "[O]nce an official is alerted to an excessive risk to inmate safety or health through [an inmate's] correspondence, refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id.* at 782.

But if, upon learning of an inmate's complaints, a prison official reasonably responds to those complaints, the prison official lacks a "sufficiently culpable state of mind" to be deliberately indifferent. *See Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006) (finding grievance counselor did not violate the Eighth Amendment where he researched inmate's complaint, learned that medical professionals had seen and diagnosed an inmate with medical condition and determined that surgery was not required); *Burks v. Remisch*, 555 F.3d 592, 594-95 (7th Cir. 2009) (affirming grant of summary judgment to prison complaint examiner who denied grievance as untimely "because she carried out her job exactly as she was supposed to"); *see also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) ("Even if he recognizes the substantial risk [to an inmate's health or safety], an official is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)). Both Ms. Conyers and Mr. Alsip are entitled to judgment as a matter of law because they reasonably responded to Mr. Boykins's complaints about his medical care.

It is undisputed that Ms. Conyers received Mr. Boykins's informal grievances about the missed glucose monitoring and insulin shots on July 19, 2019. Dkt. 63-2 at ¶ 10. When she received these complaints, she promptly reached out to Mr. King, the Health Services Administrator, to find out more information. *Id.* at ¶ 11. Although he did not respond to Ms. Conyers's inquiry, dkt. 63-2 at ¶ 12, Mr. Boykins has presented no evidence that it was unreasonable for Ms. Conyers to fail

to follow-up with Mr. King regarding the complaints. And, any failure to follow-up with Mr. King was rectified when Ms. Conyers received the formal grievance, appeal, and informal grievance the next month and reached out to Ms. Frye to address Mr. Boykins's complaints. *See* dkt. 63-2 at ¶¶ 13-18. Much like the grievance counselor in *Johnson*, 433 F.3d at 1010-11, Ms. Conyers investigated Mr. Boykins's complaints to ensure that he was receiving appropriate medical care. Thus, she lacked a sufficiently culpable state of mind to be deliberately indifferent.[3] *Id.* Ms. Conyers's request for judgment as a matter of law is **granted**.

The same conclusion is true for Mr. Alsip. When he received Mr. Boykins's informal grievance in August 2019, he immediately contacted a Health Services Administrator and discussed Mr. Boykins's complaints. Dkt. 63-10 at ¶ 6-7. While it might have been helpful for Mr. Alsip to notify Mr. Boykins of this communication, Mr. Alsip's failure to do pass along this information does not render his response unreasonable. Mr. Alsip exercised the authority of his office, *see Perez*, 792 F.3d at 782, by contacting an administrator within the medical unit to notify them of Mr. Boykins's complaints and ensure that Mr. Boykins received necessary medical treatment. There is no evidence upon which a reasonable jury could rely to conclude that Mr. Alsip displayed deliberate indifference to Mr. Boykins's complaints. Mr. Alsip's request for summary judgment is therefore **granted**.

Because Mr. Boykins has not established a constitutional violation, the Court need not address the defendants' qualified immunity defense. *See Locke v. Haessig*, 788 F.3d 662, 667 (7th

---

[3] Even if Ms. Conyers's failure to follow up with Mr. King when he did not respond to her July 2019 inquiry could support a finding of deliberate indifference, "deliberate indifference entails something more than mere negligence." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021) (cleaned up). Mr. Boykins presents no evidence to show that Ms. Conyers's failure to follow up was anything other than negligence. Additionally, Mr. Boykins submits no evidence or argument to defeat Ms. Conyers's defense of qualified immunity.

Cir. 2015 (recognizing first prong of qualified immunity analysis requires determination of whether defendant violated a constitutional right).

### IV. Conclusion

For these reasons, the motion for summary judgment filed by Ms. Conyers and Mr. Alsip, dkt. [61], is **granted**. The Eighth Amendment claims against them are **dismissed with prejudice**. Because Mr. Boykins's claims against Mr. King and Wexford of Indiana, LLC, remain pending, *see* dkt. 94, no partial judgment shall issue at this time.

The **clerk is directed** to terminate Ms. Conyers and Mr. Alsip as defendants on the docket.

**IT IS SO ORDERED.**

Date:   3/22/2022

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

9

Distribution:

DEADRIAN BOYKINS
201883
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Matthew Jacob Goldsmith
INDIANA ATTORNEY GENERAL
matthew.goldsmith@atg.in.gov

Marley Genele Hancock
CASSIDAY SCHADE LLP
mhancock@cassiday.com

Adam Jay Harvey
OFFICE OF THE INDIANA ATTORNEY GENERAL
adam.harvey@atg.in.gov

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov

Molly Michelle McCann
INDIANA ATTORNEY GENERAL
mmccann@taylorlitigation.com

Erika Lauren Steuerwald
KATZ  KORIN CUNNINGHAM, P.C.
esteuerwald@kkclegal.com

Robert Lewis Yates
INDIANA ATTORNEY GENERAL
Robert.yates@atg.in.gov

Jarod M. Zimmerman
KATZ  KORIN CUNNINGHAM, P.C.
jzimmerman@kkclegal.com